**TESTA HECK TESTA & WHITE, P.A.**
By :   Michael L. Testa
     mtesta@testalawyers.com
     Justin R. White
     jwhite@testalawyers.com
424 Landis Avenue
Vineland, NJ  08360
Phone: (856) 691-2300
Fax:     (856) 691-5655

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE DeJESUS | Docket No: |
| Plaintiff | CIVL ACTION |
| vs. | |
| VERINT SYSTEMS, INC. | COMPLAINT & JURY DEMAND |
| Defendants | |

Plaintiff, JOSE DeJESUS, by way of Complaint against the Defendant, does hereby state and say as follows:

### ADDRESSES (L. Civ. R. 10.1)

| | |
|---|---|
| Plaintiff, Jose DeJesus | Verint Systems, Inc. |
| 2795 Driftwood Lane | 330 S. Service Road |
| Vineland, NJ 08361 | Melville, NJ 11747 |

### PARTIES

1.    Plaintiff, Jose DeJesus ("Plaintiff" or "DeJesus"), a citizen of the State of New Jersey, is a former employee of the Defendant. Plaintiff resides at 2795 Driftwood Lane in Vineland, New Jersey.

1

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

2. Defendant, Verint Systems, Inc. ("Defendant" or "Verint"), is a citizen of the State of New Jersey for jurisdictional purposes and is the former employer of the Plaintiff. Defendant has business locations Lebanon, New Jersey and Lyndhurst, New Jersey. Verint employs more than fifty (50) persons. Defendant has a main business address of 330 S. Service Road in Melville, New York.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction as the Plaintiff's claims arise under 42 U.S.C. § 2000e ("Title VII"), 28 U.S.C. § 2601 *et. seq.* (the "FMLA"), and 42 U.S.C. § 12201 *et. seq.* (the "ADA").

4. Venue is appropriately laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) as it is the judicial district in which the claims asserted herein arose and because all parties reside in this district.

5. DeJesus' claims against Verint were filed with the EEOC. The EEOC has issued DeJesus a "Right to Sue" letter and this Complaint is filed within ninety (90) days of DeJesus' receipt of such letter.

## ALLEGATIONS OF FACT

6. Jose DeJesus is a male of Hispanic (Puerto Rican) ethnicity.

7. As a Hispanic, DeJesus is within a protected class pursuant to 42 U.S.C. § 2000e.

8. DeJesus first became employed by Verint on or about May 15, 2006.

9. Verint is an analytics company. The company sells software and hardware products for customer engagement management, security, surveillance, and business intelligence. Their products are designed to assist clients in data analysis, specifically large data sets.

10. Plaintiff held the position of Solutions Engineer with the Defendant. This is described as a sales position.

11. Shortly after joining Verint, DeJesus was subjected to sexual harassment and unwanted touching of a sexual nature by another Verint employee identified as Ram Swery ("Swery").

12. Specifically, Swery fondled DeJesus at a Verint company event that took place in May of 2006.

13. Swery was the brother-in-law of Verint's chief executive officer. Because of Swery's status and familial relations, DeJesus did not immediately report the sexual harassment. However, DeJesus made in known to Swery that his sexual advances and touching were unwanted.

14. After this incident of sexual harassment and unwanted touching, Swery was assigned to be DeJesus' "mentor" within the company.

15. In retaliation for DeJesus' rejection of Swery's sexual advances and on account of DeJesus' ethnicity, Swery made no effort to mentor DeJesus or otherwise assist in DeJesus' advancement at Verint.

16. In retaliation for DeJesus' rejection of Swery's sexual advances and on account of DeJesus' ethnicity, Swery refused to provide DeJesus with the training that would optimize DeJesus' chances for success as a Verint employee.

17. In approximately February of 2009, Swery was promoted to a management level position and began to supervise DeJesus.

18. Upon Swery's promotion, DeJesus reported to an upper-level manager, Joel Garnatz, as to DeJesus' troubled past with Swery. Garnatz disregarded DeJesus' concerns, and otherwise failed to address the situation.

19. Once he began supervising DeJesus, Swery continued to engage in his campaign of retaliation and ethnic discrimination against DeJesus. Swery assigned customer leads and opportunities in an inequitable manner, and purposefully denied DeJesus the opportunity to work with promising potential customers of Verint.

20. Further, and on those occasions where DeJesus would enjoy a sales success, Swery would undermine such successes and would purposefully omit DeJesus' successes from Verint's regional sales calls.

21. Swery's efforts to cause DeJesus' failure at Verint were done with the knowledge and support of Joel Garnatz.

22. During this time period, DeJesus' wife became ill with cancer, a qualifying disability under the ADA.

23. DeJesus took approved FMLA leave from March 2009 until June 2009 to care for his ill and disabled wife.

24. Upon his return to work, DeJesus was assigned to support a new product line that Verint had obtained from an acquired company. DeJesus did not welcome this reassignment.

25. Further, Verint failed to properly train DeJesus on the new product line.

26. This reassignment and failure to properly train DeJesus was on account of his ethnicity, in retaliation for his refusal of Swery's sexual advances, in retaliation for his use of FMLA leave, and/or on account his of his association with a "disabled" person (DeJesus' wife).

27. Throughout this time, DeJesus continued to be supervised by Ram Swery.

28. Beginning in 2010, Swery began to yell at DeJesus and berate DeJesus in front of co-workers. Such conduct by Swery was a continuation of his campaign of retaliation and ethnic discrimination against DeJesus. DeJesus reported Swery's behavior and actions to Verint's human resources department, but the situation was not adequately addressed by Verint.

29. Swery continued to be aided and abetted by Joel Garnatz in the ongoing campaign to destroy DeJesus' career.

30. In 2010, Swery and Garnatz colluded to ensure that DeJesus received a poor performance review, despite the fact that DeJesus had recently enjoyed a major success in promoting a new Verint product to a major customer of Verint.

31. Throughout his employment at Verint, DeJesus was subjected to comments from Swery as to DeJesus' Hispanic (Puerto Rican) ethnicity.

32. By way of example and not limitation, in March of 2013, Swery began repeatedly telling a story to co-workers, and in the presence of DeJesus, about becoming lost in a Hispanic neighborhood, and that Swery was given a police escort out of the neighborhood because of the danger presented by Hispanics and their neighborhoods.

33. DeJesus took a second, approved FMLA leave from May 13, 2011 until August 8, 2011, to care for his ill and disabled wife.

34. Upon DeJesus' return to work, Swery and Verint continually assigned DeJesus with work outside his area of expertise. Swery and Verint singled out DeJesus for large amounts of menial work. These actions taken against DeJesus were on account of his ethnicity, in retaliation for his refusal of Swery's sexual advances, in retaliation for his use of FMLA leave, and/or on account his of his association with a "disabled" person (DeJesus' wife).

35. Also, DeJesus did not receive the raises in compensation enjoyed by his similarly situated co-workers. This denial of raises was on account of DeJesus' ethnicity, in retaliation for his refusal of Swery's sexual advances, in retaliation for his use of FMLA leave, and/or on account his of his association with a "disabled" person (DeJesus' wife).

36. In February of 2013, DeJesus' wife died. DeJesus took an approved bereavement leave. Upon his return to work, he continued to experience discrimination and retaliation.

37. In September of 2013, Swery and Verint again gave DeJesus another unjustified poor performance review. This poor performance review was on account of DeJesus' ethnicity, in retaliation for his refusal of Swery's sexual advances, in retaliation for his use of FMLA leave, and/or on account his of his association with a "disabled" person (DeJesus' wife).

38. In September of 2013, DeJesus reported the discrimination and retaliation he was experiencing to Verint's human resources department. Once again, HR failed to address DeJesus' legitimate concerns.

39. On October 16, 2013, DeJesus was terminated from Verint. His termination was on account of DeJesus' ethnicity, in retaliation for his refusal of Swery's sexual advances, in retaliation for his use of FMLA leave, on account his of his association with a "disabled" person (DeJesus' wife), and in his retaliation for reporting to HR in September of 2013 his allegations of discrimination and retaliation.

## COUNT ONE

40. The preceding paragraphs are incorporated by reference.

41. Title VII prohibits discrimination as to those in a protected class, which includes ethnicity.

42. Plaintiff is within a protected class on account of his Hispanic (Puerto Rican) ethnicity.

43. Defendant unlawfully discriminated against Plaintiff on account of his Hispanic ethnicity.

44. Defendant further discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department.

45. Such discrimination by the Defendant includes, but is not limited to, failing to adequately train Plaintiff, failing to address Plaintiff's complaints as to his employment, undermining Plaintiff's career, assigning Plaintiff undesirable work, withholding compensation and raises, and through words and actions creating a work environment hostile to a person of Hispanic ethnicity.

46. Such discrimination by the Defendant further includes discharging Plaintiff from his employment on account of his Hispanic ethnicity.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

## COUNT TWO

47. The preceding paragraphs are incorporated by reference.

48. Title VII further prohibits sexual harassment and discrimination in the workplace.

49. Verint subjected Plaintiff to sexual harassment and a sexually hostile work environment.

50. Further, Plaintiff was retaliated against because of his rejection of sexual advances by a supervisor, Swery.

51. Defendant further discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department.

52. Such retaliation by the Defendant includes, but is not limited to, failing to adequately train Plaintiff, failing to address Plaintiff's complaints as to his employment, undermining Plaintiff's career, assigning Plaintiff undesirable work, and withholding compensation and raises.

53. Such retaliation by the Defendant further includes discharging Plaintiff from his employment.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

### COUNT THREE

54. The preceding paragraphs are incorporated by reference.

55. The FMLA prohibits discrimination and retaliation against an employee that exercises his rights under the FMLA.

56. On two occasions, Plaintiff exercised his rights under the FMLA.

57. Thereafter, Defendant unlawfully discriminated and retaliated against Plaintiff on account of his exercise of rights under the FMLA.

58. Defendant further discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department.

59. Such discrimination and retaliation by the Defendant includes, but is not limited to, failing to adequately train Plaintiff, failing to address Plaintiff's complaints as to his employment, undermining Plaintiff's career, assigning Plaintiff undesirable work, and withholding compensation and raises.

60. Such discrimination and retaliation by the Defendant further includes discharging Plaintiff from his employment on account of his exercise of rights under the FMLA.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

## COUNT FOUR

61. The preceding paragraphs are incorporated by reference.

62. The ADA prohibits discrimination and retaliation against an employee that associates with a disabled person.

63. Plaintiff's wife was a disabled person, a fact known to the Defendant.

64. Defendant unlawfully discriminated and retaliated against Plaintiff on account of his association with a disabled person.

65. Defendant further discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department.

66. Such discrimination and retaliation by the Defendant includes, but is not limited to, failing to adequately train Plaintiff, failing to address Plaintiff's complaints as to his employment, undermining Plaintiff's career, assigning Plaintiff undesirable work, and withholding compensation and raises.

67. Such discrimination and retaliation by the Defendant further includes discharging Plaintiff from his employment on account of his association with a disabled person.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

                                                  **TESTA HECK TESTA & WHITE, P.A.**

Dated: December 15, 2017        By:   *s/ Michael L. Testa*
                                                                      Michael L. Testa
                                                                         Justin R. White
                                                                  424 W. Landis Avenue
                                                                     Vineland, NJ 08360
                                                               Phone:   (856) 691-2300
                                                               Fax:      (856) 691-5655

## JURY DEMAND

Plaintiff demands a Trial by jury on all issues in accord with the Federal Rules of Civil Procedure.

Dated: December 15, 2017              *s/ Michael L. Testa*
                                                        **TESTA HECK TESTA & WHITE, P.A.**

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

I hereby certify that the matter in controversy is not subject to any related pending case or proceeding.

Dated: December 15, 2017              *s/ Michael L. Testa*
                                                        **TESTA HECK TESTA & WHITE, P.A.**