**TESTA HECK TESTA & WHITE, P.A.**
  By :  Michael L. Testa
         mtesta@testalawyers.com
         Justin R. White
         jwhite@testalawyers.com
424 Landis Avenue
Vineland, NJ  08360
Phone: (856) 691-2300
Fax:    (856) 691-5655

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSE DeJESUS** | Docket No: 1:17-cv-13102 (RMB)(AMD) |
| Plaintiff | CIVL ACTION |
| vs. | |
| **VERINT SYSTEMS, INC.** | **AMENDED COMPLAINT** |
|  | **& JURY DEMAND** |
| Defendants | |

Plaintiff, JOSE DeJESUS, by way of Amended Complaint against the Defendant, does hereby state and say as follows:

**ADDRESSES (L. Civ. R. 10.1)**

Plaintiff, Jose DeJesus            Verint Systems, Inc.
2795 Driftwood Lane                330 S. Service Road
Vineland, NJ 08361                 Melville, NY 11747

**PARTIES**

1.      Plaintiff, Jose DeJesus ("Plaintiff" or "DeJesus"), a citizen of the State of New Jersey, is a former employee of the Defendant. Plaintiff resides at 2795 Driftwood Lane in Vineland, New Jersey.

2. Defendant, Verint Systems, Inc. ("Defendant" or "Verint"), is a citizen of the State of New Jersey for jurisdictional purposes and is the former employer of the Plaintiff. Defendant has business locations Lebanon, New Jersey and Lyndhurst, New Jersey. Verint employs more than fifty (50) persons. Defendant has a main business address of 330 S. Service Road in Melville, New York.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction as the Plaintiff's claims arise under 42 U.S.C. § 2000e ("Title VII") and 28 U.S.C. § 2601 *et. seq.* (the "FMLA").

4. Venue is appropriately laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) as it is the judicial district in which the claims asserted herein arose and because all parties reside in this district.

5. DeJesus' claims against Verint were filed with the EEOC. The EEOC has issued DeJesus a "Right to Sue" letter and the original Complaint was filed within ninety (90) days of DeJesus' receipt of such letter.

## ALLEGATIONS OF FACT

6. Plaintiff sues on account of unlawful conduct by Verint that occurred in the fall of 2013. More specifically, Plaintiff alleges that in the fall of 2013 he was retaliated against and terminated after he objected to and/or opposed actions that violated Title VII and the FMLA.

7. Jose DeJesus is a male of Hispanic (Puerto Rican) ethnicity.

8. As a Hispanic, DeJesus is within a protected class pursuant to 42 U.S.C. § 2000e.

9. DeJesus first became employed by Verint on or about May 15, 2006.

10. Verint is an analytics company. The company sells software and hardware products for customer engagement management, security, surveillance, and business intelligence. Their products are designed to assist clients in data analysis, specifically large data sets.

11. Plaintiff held the position of Solutions Engineer with the Defendant. This is described as a sales position.

12. Shortly after joining Verint, DeJesus was subjected to sexual harassment and unwanted touching of a sexual nature by another Verint employee identified as Ram Swery ("Swery").

13. Specifically, Swery fondled DeJesus at a Verint company event that took place in May of 2006.

14. Swery was the brother-in-law of Verint's chief executive officer. Because of Swery's status and familial relations, DeJesus did not immediately report the sexual harassment. However, DeJesus made in known to Swery that his sexual advances and touching were unwanted.

15. After this incident of sexual harassment and unwanted touching, Swery was assigned to be DeJesus' "mentor" within the company.

16. In retaliation for DeJesus' rejection of Swery's sexual advances and on account of DeJesus' ethnicity, Swery made no effort to mentor DeJesus or otherwise assist in DeJesus' advancement at Verint.

17. In retaliation for DeJesus' rejection of Swery's sexual advances and on account of DeJesus' ethnicity, Swery refused to provide DeJesus with the training that would optimize DeJesus' chances for success as a Verint employee.

18. As such, Plaintiff's workplace environment was altered and thereafter continued to be altered in a negative manner.

19. In approximately February of 2009, Swery was promoted to a management level position and began to supervise DeJesus.

20. Upon Swery's promotion, DeJesus reported to an upper-level manager, Joel Garnatz, as to DeJesus' troubled past with Swery. Garnatz disregarded DeJesus' concerns, and otherwise failed to address the situation.

21. Once he began supervising DeJesus, Swery continued to engage in his campaign of retaliation and ethnic discrimination against DeJesus. Swery assigned customer leads and opportunities in an inequitable manner, and purposefully denied DeJesus the opportunity to work with promising potential customers of Verint.

22. Further, and on those occasions where DeJesus would enjoy a sales success, Swery would undermine such successes and would purposefully omit DeJesus' successes from Verint's regional sales calls.

23. Swery's efforts to cause DeJesus' failure at Verint were done with the knowledge and support of Joel Garnatz.

24. During this time period, DeJesus' wife became ill with cancer.

25. DeJesus took approved FMLA leave from March 2009 until June 2009 to care for his ill and disabled wife.

26. Upon his return to work, DeJesus was assigned to support a new product line that Verint had obtained from an acquired company. DeJesus did not welcome this reassignment.

27. Further, Verint failed to properly train DeJesus on the new product line.

28. This reassignment and failure to properly train DeJesus was on account of his ethnicity, in retaliation for his refusal of Swery's sexual advances, and in retaliation for his use of FMLA leave.

29. Throughout this time, DeJesus continued to be supervised by Ram Swery.

30. Beginning in 2010, Swery began to yell at DeJesus and berate DeJesus in front of co-workers. Such conduct by Swery was a continuation of his campaign of retaliation and ethnic discrimination against DeJesus. DeJesus reported Swery's behavior and actions to Verint's human resources department, but the situation was not adequately addressed by Verint.

31. Swery continued to be aided and abetted by Joel Garnatz in the ongoing campaign to destroy DeJesus' career.

32. In 2010, Swery and Garnatz colluded to ensure that DeJesus received a poor performance review, despite the fact that DeJesus had recently enjoyed a major success in promoting a new Verint product to a major customer of Verint.

33. Throughout his employment at Verint, DeJesus was subjected to comments from Swery as to DeJesus' Hispanic (Puerto Rican) ethnicity.

34. By way of example and not limitation, in March of 2013, Swery began repeatedly telling a story to co-workers, and in the presence of DeJesus, about becoming lost in a Hispanic neighborhood, and that Swery was given a police escort out of the neighborhood because of the danger presented by Hispanics and their neighborhoods.

35. DeJesus took a second, approved FMLA leave from May 13, 2011 until August 8, 2011, to care for his ill and disabled wife.

36. Upon DeJesus' return to work, Swery and Verint continually assigned DeJesus with work outside his area of expertise. Swery and Verint singled out DeJesus for large amounts

of menial work. These actions taken against DeJesus were on account of his ethnicity, in retaliation for his refusal of Swery's sexual advances, and in retaliation for his use of FMLA leave.

37. Also, DeJesus did not receive the raises in compensation enjoyed by his similarly situated co-workers. This denial of raises was on account of DeJesus' ethnicity, in retaliation for his refusal of Swery's sexual advances, and in retaliation for his use of FMLA leave.

38. In February of 2013, DeJesus' wife died. DeJesus took an approved bereavement leave. Upon his return to work, he continued to experience discrimination and retaliation.

39. In September of 2013, Swery and Verint again gave DeJesus another unjustified poor performance review. This poor performance review was on account of DeJesus' ethnicity, in retaliation for his refusal of Swery's sexual advances, and in retaliation for his use of FMLA leave.

40. Further, Swery and Verint failed to follow the correct procedures in regard to performance reviews, by: (a) denying DeJesus the ability to make new comments about the review; and (b) deleting old comments that DeJesus had made in regard to employment objectives.

41. In September of 2013, DeJesus reported the discrimination and retaliation he was experiencing to Verint's human resources department. Once again, HR failed to address DeJesus' legitimate concerns.

42. More specifically, DeJesus reported to Verint's management / HR Department that he received a negative review because he had earlier rebuffed Mr. Swery's sexual advances -- i.e. that the negative performance review was unlawfully retaliatory.

43. Further, DeJesus reported to Verint's management / HR Department that he was sexually harassed by Mr. Swery when first hired, and that the harassment was ongoing throughout the time that DeJesus was employed by Verint.

44. Further, DeJesus reported to Verint's management / HR Department that he was subjected to repeated harassment due to his national origin / ethnicity.

45. Further, DeJesus reported to Verint's management / HR Department that he was harassed and subjected to disparate treatment because he exercised his rights under the FMLA.

46. In participating in the ensuing internal investigation conducted by Verint, DeJesus again raised objection to the past sexual advances from Mr. Swery, as well as the alleged unfair treatment he received from Mr. Swery on account of his use of FMLA leave.

47. On October 16, 2013, DeJesus was terminated from Verint. His termination was on account of and in retaliation for reporting to HR in September of 2013 his allegations of discrimination, sexual harassment, retaliation and violations of the FMLA.

## **COUNT ONE**

48. The preceding paragraphs are incorporated by reference.

49. Title VII prohibits discrimination as to those in a protected class, which includes ethnicity.

50. Title VII further prohibits an employer from retaliating against an employee that objects to or opposes an employment practice that is unlawful under Title VII.

51. Plaintiff is within a protected class on account of his Hispanic (Puerto Rican) ethnicity.

52. Defendant discriminated against Plaintiff on account of his Hispanic ethnicity.

53. Defendant discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department, and thereafter participated in the investigation into his report / complaint.

54. More specifically, Plaintiff engaged in protected activity when he objected to and opposed instances where he was discriminated against on account of his ethnicity.

55. Such discrimination and retaliation by the Defendant culminated in Plaintiff's discharge from employment.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

## COUNT TWO

56. The preceding paragraphs are incorporated by reference.

57. Title VII further prohibits sexual harassment and discrimination in the workplace.

58. Title VII further prohibits an employer from retaliating against an employee that objects to or opposes an employment practice that is unlawful under Title VII.

59. Verint subjected Plaintiff to sexual harassment and a sexually hostile work environment.

60. Defendant discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department, and thereafter participated in the investigation into his report / complaint.

61. More specifically, Plaintiff engaged in protected activity when he objected to and opposed instances where he was sexually harassed and/or subjected to a hostile work environment.

62. Such discrimination and retaliation by the Defendant culminated in Plaintiff's discharge from employment.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

## COUNT THREE

63. The preceding paragraphs are incorporated by reference.

64. The FMLA prohibits discrimination and retaliation against an employee that exercises his rights under the FMLA.

65. The FMLA further prohibits an employer from retaliating against an employee that objects to or opposes an employment practice that is unlawful under FMLA.

66. On two occasions, Plaintiff exercised his rights under the FMLA.

67. Thereafter, Defendant discriminated and retaliated against Plaintiff on account of his exercise of rights under the FMLA.

68. Defendant discriminated and retaliated against Plaintiff for engaging in protected activity in September of 2013, at which time he lodged a report / complaint with Defendant's HR department, and thereafter participated in the investigation into his report / complaint.

69. More specifically, Plaintiff engaged in protected activity when he objected to and opposed instances where he was discriminated and retaliated against for exercising his rights under the FMLA.

70. Such discrimination and retaliation by the Defendant culminated in Plaintiff's discharge from employment.

**WHEREFORE**, the Plaintiff, Jose DeJesus, demands judgment against the Defendant in the form of:

    A. Compensatory damages;

    B. Nominal damages;

    C. Punitive damages;

    D. Statutory attorneys' fees and costs;

    E. Such other relief deemed just and equitable.

**TESTA HECK TESTA & WHITE, P.A.**

Dated: July 2, 2018    By:   s/ *Justin R. White*
    Michael L. Testa
    Justin R. White
    424 W. Landis Avenue
    Vineland, NJ 08360
    Phone:  (856) 691-2300
    Fax:  (856) 691-5655

## JURY DEMAND

Plaintiff demands a Trial by jury on all issues in accord with the Federal Rules of Civil Procedure.

**TESTA HECK TESTA & WHITE, P.A.**

Dated: July 2, 2018        By:    s/ *Justin R. White*
                                                            Michael L. Testa
                                                            Justin R. White

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

I hereby certify that the matter in controversy is not subject to any related pending case or proceeding.

**TESTA HECK TESTA & WHITE, P.A.**

Dated: July 2, 2018        By:    s/ *Justin R. White*
                                                            Michael L. Testa
                                                            Justin R. White